THE HONORABLE JOHN C. COUGHENOUR

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9  | TRAVELERS PROPERTY CASUALTY
10 | COMPANY OF AMERICA, a foreign
   | insurer,

CASE NO. C10-1110-JCC

ORDER GRANTING THIRD PARTY
PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT;
DENYING THIRD PARTY
DEFENDANT'S MOTION FOR
LEAVE TO FILE UNDER SEAL;
AND DENYING THIRD PARTY
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

11

                  Plaintiff,

12

        v.

13

14 | AF EVANS COMPANY, a California
   | corporation, AFE SPINNAKER, a
15 | Washington limited liability corporation,
   | AF EVANS DEVELOPMENT INC., a
16 | California corporation, RICHARD BELL,
   | an individual, JACK ROBERTSON, an
17 | individual, TORY LAUGHLIN
   | TAYLOR, an individual, and
18 | ESPLANADE CONDOMINIUM
   | ASSOCIATION, a Washington non-profit
19 | corporation,

20
                  Defendants.

21
22
23
24
25 | ORDER GRANTING THIRD PARTY
   | PLAINTIFF'S MOTION FOR PARTIAL
26 | SUMMARY JUDGMENT; DENYING THIRD
   | PARTY DEFENDANT'S MOTION FOR LEAVE
   | TO FILE UNDER SEAL; AND DENYING THIRD
   | PARTY DEFENDANT'S MOTION FOR
   | SUMMARY JUDGMENT
   | PAGE - 1

AFE SPINNAKER, a Washington limited
liability corporation, AF EVANS
DEVELOPMENT INC., a California
corporation, RICHARD BELL, an
individual, JACK ROBERTSON, an
individual, TORY LAUGHLIN
TAYLOR, an individual, and
ESPLANADE CONDOMINIUM
ASSOCIATION, a Washington non-profit
corporation,

                       Third Party Plaintiffs,

     v.

STEADFAST INSURANCE COMPANY,
a Delaware corporation, and
HEFFERNAN INSURANCE BROKERS,
a California corporation,

                   Third Party Defendants.

This matter comes before the Court on (1) Third Party Plaintiff Esplanade Condominium Association's (the "Association") motion for partial summary judgment (Dkt. No. 78) and Third Party Defendant Steadfast Insurance Company's (2) motion for leave to file documents under seal (Dkt. No. 92) and (3) motion for summary judgment (Dkt. No. 81). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the Association's motion for partial summary judgment (Dkt. No. 78), DENIES Steadfast's motion for leave to file documents under seal (Dkt. No. 92), and DENIES Steadfast's motion for summary judgment (Dkt. No. 81) for the reasons explained herein.

## I.     BACKGROUND

This is an insurance coverage and bad faith dispute. In the underlying suit, the Association sued, *inter alia*, Defendants AF Evans Company ("AFECO"), AFE Spinnaker ("Spinnaker"), and AF Evans Development ("AFED"). (Dkt. No. 64 Ex. 5.) AFECO had created Spinnaker (an LLC of which AFECO and AFED were members) in 2005 to serve as the

"declarant" of the Esplanade Condominiums (the "Esplanade"), *i.e.*, to oversee the conversion of the complex from apartments to condos and to market and sell them. (Dkt. Nos. 1 at 3 ¶ 3.30, 63 Ex. 3 at 5–7; *see* Wash. Rev. Code. § 64.34.020(15)(d).) The Association's members had purchased units in the Esplanade. In the underlying suit, the Association alleged, *inter alia*, that "defects and deficiencies . . . both in the original construction, and in improvements to the Project made or contracted for by or on behalf of the Declarant . . . resulted in physical damage to the common elements . . . and units of the Project" that "render[ed] [those] units and common elements unsuitable for ordinary uses," in breach of the implied warranty of suitability under the Washington Condominium Act ("WCA"). (Dkt. No. 64 Ex. 5 at 8–9 ¶¶ 4.3–4.5.) The alleged physical damage included "damage caused by water intrusion into and through the building envelope and its underlying components." (*Id.* Ex. 5 at 9 ¶ 4.5; *see id.* Ex. 5 at 15 ¶ 6.9 (alleging "extensive[] water damage[]" which the Declarant had failed to discover, disclose, or fix).) The Association sought damages for "the cost of repairing the damage to the Project" and "correcting defective conditions and damage." (*Id.* Ex. 5 at 9 ¶ 4.6.) It also alleged that the declarant's breach of the WCA implied warranty of suitability constituted a violation of the Washington Consumer Protection Act ("CPA"), for which it was entitled to damages and attorney's fees. (*Id.* Ex. 5 at 20 § IX.)

AFECO, AFED, and Spinnaker tendered defense in the underlying suit, and claims for coverage for the alleged damages, to their insurance providers. AFECO and AFED claimed coverage under a January 2006 – January 2007 policy with Steadfast. (Dkt. No. 62 Exs. 1–3.) That policy provides:

> We will pay those sums that the insured becomes legally obligated to pay as "damages" because of . . . "property damage" to which this insurance applies.
> . . . . .
> This insurance applies to . . . "property damage" only if . . . [t]he . . . "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and . . . [t]he . . . "property damage" occurs during the "policy period."
> . . . . .

"Damages" means money that is paid to compensate an injured party for . . . "property damage" . . . .

. . . . .

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, that results in . . . "property damage."

. . . . .

"Property damage" means . . . [p]hysical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it . . . .

(Dkt. No. 72 Ex. H at 40, 52, 54.) The policy also contains a "Residential Exclusion":

This policy does not apply to any claim, "suit" or demand seeking "damages" for . . . "property damage" . . . arising out of or in any way connected to . . . "your work", directly or indirectly, whether ongoing or completed . . . as respects any work performed in connection with the construction, reconstruction or remodeling of any "residential building."

. . . "[R]esidential building" means any . . . residential condominium . . . .

(*Id.* Ex. H at 30.) The policy defines "your work" as follows:

"Your work" means:
a.      Work or operations performed by you or on your behalf; and
b.      Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:
a.      Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
b.      The providing of or failure to provide warnings or instructions in connection with such goods or products.

(*Id.* Ex. H at 55.) Steadfast denied coverage and a defense on the ground that "the subject policy contains an express exclusion for any property damage claims or suits arising out of or in any way connected to residential projects, which includes by definition condominiums and/or condominium conversations [sic]." (Dkt. No. 62 Ex. 3 at 11–12.)

In July 2010, the parties settled: Spinnaker agreed to pay $8 million plus attorney's fees, costs, and CPA penalties; AFECO and AFED agreed to pay $7.2 million plus attorney's fees,

costs, and CPA penalties; and the defendants assigned their rights against their insurers to the Association. (Dkt. No. 72 Ex. O at 23 ¶ 2.2, 21 ¶ 1.2.) The state court overseeing the underlying suit later held a reasonableness hearing, found the stipulated settlement unreasonable under the factors set forth in *Chaussee v. Maryland Casualty Co.*, 803 P.2d 1339 (Wash. Ct. App. 1991), and held that a reasonable settlement was $5,121,009, consisting of $4,461,592 in repair costs, $514,417 in attorney's fees, and $145,000 in CPA penalties. (Dkt. No. 72 Exs. P at 37, S at 3.) The court entered a stipulated judgment against AFECO, AFED, and Spinnaker, jointly and severally, in those amounts. (*Id.* Ex. S at 3.)

In the instant action, the Association filed a third party complaint against Steadfast based on Steadfast's denial of coverage. The Association's claims include breach of contract, insurance bad faith and coverage by estoppel, violations of claims handling regulations and the CPA, negligence, and equitable contribution. (Dkt. No. 75 at 30–34 § 3.5.)

## II.     THE ASSOCIATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### A.     Bad-Faith Refusal to Defend

The Association moves for summary judgment on its claim that Steadfast unreasonably refused to defend AFECO and AFED under the 2006–2007 policy against the allegations in the underlying suit that they were liable for the cost of repairing property damage caused by water intrusion resulting from, *inter alia*, defects in the original construction of the condo complex.

"An insurer has a duty to defend when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage." *Woo v. Fireman's Fund Ins. Co.*, 164 P.3d 454, 459 (Wash. 2007) (quotation marks omitted). "The duty to defend is triggered if the insurance policy *conceivably* covers allegations in the complaint." *Am. Best Food, Inc. v. Alea London, Ltd.*, 229 P.3d 693, 696 (Wash. 2010). "The insurer is entitled to investigate the facts and dispute the insured's interpretation of the law, but if there is any reasonable interpretation of the facts or the law that could result in coverage, the insurer must defend." *Id.*; *see Truck Ins. Exch. v. VanPort Homes,*

*Inc.*, 58 P.3d 276, 282 (Wash. 2002) ("Only if the alleged claim is clearly not covered by the policy is the insurer relieved of its duty to defend."). In determining whether there is a duty to defend, "[a]n insurer has an obligation to give the rights of the insured the same consideration that it gives to its own monetary interests." *Truck Ins. Exch.*, 58 P.3d at 282.

Insurers owe a statutory duty of good faith to their insureds. Wash. Rev. Code § 48.01.030. A claim for breach of the duty of good faith "sounds in tort." *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 196 P.3d 664, 668 (Wash. 2008) (quotation marks omitted). The plaintiff must demonstrate duty, breach, causation, and harm. *Id.* "An insurer acts in bad faith if its breach of the duty to defend was unreasonable, frivolous, or unfounded." *Am. Best*, 229 P.3d at 700; *see, e.g.*, *id.* at 701 (insurer's "refusal to defend . . . based upon an arguable interpretation of its policy was unreasonable and therefore in bad faith"). Whether an insurer acted in bad faith is a question of fact. *Smith v. Safeco Ins. Co.*, 78 P.3d 1274, 1277 (Wash. 2003).

A motion for summary judgment should be granted only when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Sony Computer Entm't Am., Inc. v. Am. Home Assurance Co.*, 532 F.3d 1007, 1011 (9th Cir. 2008). The factual issue of whether an insurer acted in bad faith may be decided on a motion for summary judgment "if there are no disputed material facts pertaining to the [un]reasonableness of the insurer's conduct under the circumstances," or "reasonable minds could not differ that [the insurer's] denial of coverage was based upon [un]reasonable grounds." *Smith*, 78 P.3d at 1277; *see Michelman v. Lincoln Nat'l Life Ins. Co.*, 685 F.3d 887, 902 (9th Cir. 2012).

The Association's argument is straightforward. First, it argues, the plain text of the policy provides for coverage of the damages alleged in the complaint in the underlying suit. The complaint alleged, *inter alia*, that "defects and deficiencies . . . in the original construction . . . resulted in physical damage to the common elements . . . and units of the Project," including "damage caused by water intrusion into and through the building envelope and its underlying

1  components." (Dkt. No. 64 Ex. 5 at 8–9 ¶¶ 4.3–4.5.) The alleged damage caused by continuous

2  "water intrusion" fits the policy definition of "property damage" caused by an "occurrence." And

3  by virtue of the complaint's allegation that the damage occurred because of "defects . . . in the

4  original construction," the complaint alleged that the damage at least might have occurred in part

5  during the policy period—after the complex's original construction. Furthermore, the policy's

6  "Residential Exclusion" does not apply because the alleged damage caused by the water

7  intrusion that resulted from original construction defects cannot reasonably be understood as

8  "arising out of or in any way connected to" (1) "[w]ork or operations performed by [AFECO or

9  AFED] or on [AFECO's or AFED's] behalf" "in connection with the construction,

10 reconstruction or remodeling of any 'residential building'" or (2) AFECO's or AFED's

11 "[w]arranties or representations" concerning such work. (Dkt. No. 72 Ex. H at 30, 55.) To the

12 contrary, this alleged damage arose out of structural defects in the complex that preexisted any

13 "work" done by AFECO or AFED. Thus, "the insurance policy *conceivably* covers allegations in

14 the complaint" and so Steadfast's "duty to defend [wa]s triggered" when AFECO submitted its

15 claim. *Am. Best*, 229 P.3d at 696. Steadfast therefore breached its duty to defend.

16     Moreover, the Association argues, Steadfast's determination that the policy did not

17 conceivably cover AFECO's and AFED's claim was "unreasonable" and so in bad faith. *Id.* at

18 700. That is because Steadfast ignored the plain language of the policy in denying the claim. In

19 its denial of coverage letter, Steadfast asserted that the policy excluded coverage for "any

20 property damage claims or suits arising out of or in any way connected to residential projects"

21 (Dkt. No. 62 Ex. 3 at 11), when in fact the plain language of the policy excludes coverage only

22 for property damage claims "arising out of or in any way connected to . . . [AFECO's or

23 AFED's] *work performed in connection with the construction, reconstruction or remodeling*" of

24 residential projects. (Dkt. No. 72 Ex. H at 30 (emphasis added).) Thus, Steadfast's interpretation

25 of the policy was worse than "arguable"—and thus its denial of coverage based on that

26 interpretation was even more unreasonable than that of the insurer in *American Best*, which the

1  Washington Supreme Court found to have acted in bad faith by "refus[ing] to defend . . . based

2  upon a[] [merely] arguable interpretation of its policy." 229 P.3d at 701.

3          The Court agrees.

### 1. Steadfast's "Plain Language" Argument

5          Steadfast asserts that "the plain terms of Steadfast's polic[y] expressly exclude coverage

6  for condominiums and conversion projects . . . ." (Dkt. No. 99 at 1; *see* Steadfast's Motion for

7  Summary Judgment (Dkt. No. 81) at 14 ("The policy does not provide coverage for an insured's

8  liability that is in any way connected to construction, remodeling or conversion of

9  condominiums.").) That is not what the policy says. The residential exclusion is limited to

10  property damage claims connected to the insured's *work* performed in connection with the

11  construction, reconstruction, or remodeling of condo projects. By its terms, it does not apply to

12  all property damage claims arising out of the insured's condo projects.

13          Steadfast argues that "the *Esplanade* Complaint asserted claims against Evans were [sic]

14  for its 'work,' *i.e.*, for participation as 'Declarant Alter Egos,' in converting, marketing and

15  selling the Esplanade Condominiums. Because this work was performed in connection with the

16  conversion of a condominium the [residential] exclusion applies, and Steadfast had no duty to

17  defend under the 2006-07 policy." (Dkt. No. 99 at 13; *see* Dkt. No. 81 at 14–15 (same).) It is true

18  that the complaint asserted such claims. But it *also* asserted a claim for damages for property

19  damage caused by water intrusion resulting from defects in the condo complex's original

20  construction—property damage which, under no ordinary meaning of the phrase, was "connected

21  to" AFECO's or AFED's alleged condo conversion, marketing, and sales work. *See* Steadfast's

22  Motion for Summary Judgment (Dkt. No. 81) at 8 (conceding that "the Complaint included

23  allegations of property damage caused by water intrusion"). It was unreasonable for Steadfast to

24  determine that the policy did not conceivably cover that claim.

### 2. Steadfast's Intent Argument

26          Steadfast argues that, regardless of what the policy *says*, "the parties' mutual *intent* was

for the Steadfast polic[y] . . . not to cover residential risks such as condominiums and conversions." (Dkt. No. 99 at 1 (emphasis added).) In support, Steadfast points to extrinsic evidence outside the four corners of the contract.

Steadfast's extrinsic evidence is inadmissible to alter the plain meaning of the policy language.

> The criteria for interpreting insurance contracts in Washington are well settled. We construe insurance policies as contracts. We consider the policy as a whole, and we give it a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance. Most importantly, if the policy language is clear and unambiguous, we must enforce it as written; we may not modify it or create ambiguity where none exists.

*Quadrant Corp. v. Am. States Ins. Co.*, 110 P.3d 733, 737 (Wash. 2005) (internal citations and quotation marks omitted); *see* Steadfast's Motion for Summary Judgment (Dkt. No. 81) at 14 ("Clear and unambiguous policy language is to be enforced as written, and a court may not attempt to create ambiguity where none exists.") (citing *American Nat'l Fire Ins. Co. v. B&L Trucking & Constr. Co., Inc.*, 951 P.2d 250, 256 (1998)). "[I]n Washington the expectations of the insured [or the insurer] cannot override the plain language of the contract." *Quadrant*, 110 P.3d at 737. Finally, "exclusionary clauses are construed strictly against the insurer." *Moeller v. Farmers Ins. Co.*, 267 P.3d 998, 1002 (Wash. 2011).

Here, the policy language, given a fair, reasonable, and sensible construction, is clear and unambiguous. The residential exclusion applies only to property damage "arising out of or in any way connected to . . . [AFECO's or AFED's] *work performed in connection with construction, reconstruction or remodeling* of any . . . residential condominium." (Dkt. No. 72 Ex. H at 30 (emphasis added).) The exclusion clearly does not apply to *all* condo-related property damage. Steadfast's "expectations" to the contrary "cannot override" this plain language. *Quadrant*, 110 P.3d at 737. Because the policy language is clear, it "must [be] enforce[d] . . . as written"—and Steadfast was required to interpret it "as written" in determining whether it had a duty to defend. *Id.*

1   Steadfast argues that this Court should consider its extrinsic evidence because such

2   "evidence is admissible as to the entire circumstances under which the contract was made to aid

3   in ascertaining [the] intent" of the parties. (Dkt. No. 99 at 10 (citing *Berg v. Hudesman*, 801 P.2d

4   222 (Wash. 1990)).) The role of extrinsic evidence in contract interpretation in Washington is far

5   more limited than Steadfast suggests:

> [P]arol evidence is not admissible for the purpose of adding to, modifying, or
> *contradicting* the terms of a written contract, in the absence of fraud, accident, or
> mistake. . . . [P]arol evidence is admissible to show the situation of the parties and
> the circumstances under which a written instrument was executed, for the purpose
> of ascertaining the intention of the parties and properly construing the writing.
> Such evidence, however, is admitted, *not for the purpose of importing into a
> writing an intention not expressed therein*, but with the view of elucidating the
> meaning of the words employed. Evidence of this character is admitted for the
> purpose of aiding in the interpretation of what is in the instrument, and *not for the
> purpose of showing intention independent of the instrument*. It is the duty of the
> court to declare the meaning of what is written, and not what was intended to be
> written.

14   *Berg*, 801 P.2d at 229–30 (quoting *J. W. Seavey Hop Corp. v. Pollock*, 147 P.2d 310, 316 (Wash.

15   1944)) (emphasis added); *see Lynott v. Nat'l Union Fire Ins. Co.*, 871 P.2d 146, 149 (Wash.

16   1994) (emphasizing this language in the *Berg* holding); *Nationwide Mut. Fire Ins. Co. v. Watson*,

17   840 P.2d 851, 857 (Wash. 1992) (same).

18   The 2006–2007 policy expresses a clear intention for coverage of property damage at

19   condo projects, subject only to the specific, limited exclusion for property damage "arising out of

20   or in any way connected to . . . [AFECO's or AFED's] *work performed in connection with

21   construction, reconstruction or remodeling of*" such projects. (Dkt. No. 72 Ex. H at 30 (emphasis

22   added).) Steadfast fails to point to any specific term or clause of the policy whose interpretation

23   is aided by the extrinsic evidence on which it relies. The evidence is inadmissible to prove the

24   meaning of the exclusion because it "contradict[s] the terms of [the] written contract" and

25   because Steadfast seeks to admit it "for the [improper] purpose of importing into a writing an

26   intention not expressed therein." *Berg*, 801 P.2d at 229–30 (quoting *Pollock*, 147 P.2d at 316).

1    The 2006–2007 policy conceivably covers at least some of the damages alleged in the

2    Association's complaint. Steadfast's determination to the contrary was unreasonable because it

3    was based on an interpretation of the policy that finds no support in the policy text.

4    "[R]easonable minds could not differ that [Steadfast's] denial of coverage was based upon

5    [un]reasonable grounds." *Smith*, 78 P.3d at 1277. Summary judgment for the Association on its

6    bad-faith claim against Steadfast is granted.

7    The Court's holding, that Steadfast's refusal to defend under the 2006–2007 policy

8    constituted bad faith, is sufficient to support its grant of summary judgment to the Association on

9    its claim that Steadfast denied a defense in bad faith. The Court need not—and does not—

10   consider the Association's arguments that Steadfast also acted in bad faith by refusing to defend

11   under the January 2002 – January 2006 policies and by allegedly misrepresenting the coverage

12   provided by the policies in violation of the CPA.

13   **B.      Coverage by Estoppel and Measure of Harm**

14   The Association also moves for summary judgment on its claim that Steadfast, by reason

15   of its bad faith, is estopped from asserting any coverage defenses, that the presumptive measure

16   of harm caused by Steadfast's bad faith is the $5,121,009 stipulated judgment, and that Steadfast

17   is liable to the Association for that amount.

18   **1.   Choice of Law**

19   Steadfast asserts that a conflict exists between Washington and California law, in that

20   "Washington imposes coverage by estoppel while California law does not" and "California does

21   not have the same procedure for binding an insurer to an underlying covenant judgment that

22   Washington follows," and that California law applies. (Dkt. No. 99 at 16–17 (footnotes

23   omitted).) A federal court sitting in diversity applies the forum state's choice-of-law rules.

24   *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002). Under Washington law, when parties dispute

25   choice of law, there must be an actual conflict between the law of Washington and the law of

26   another state before the court will engage in a conflict-of-laws analysis. *Erwin v. Cotter Health*

1    *Ctrs.*, 167 P.3d 1112, 1120 (Wash. 2007); *Seizer v. Sessions*, 940 P.2d 261, 264 (Wash. 1997).

2    An actual conflict exists when the result of the issue is different under the law of the two states.

3    *Seizer*, 940 P.2d at 264. Absent an actual conflict, Washington law applies. *Id.*

4        Steadfast devotes all of one sentence and two cryptic footnotes to its attempted showing

5    of a conflict between Washington and California law. (Dkt. No. 99 at 16–17 & nn.69–70.)

6    Steadfast cites to only two California cases, both of which stand for the undisputed proposition

7    that in California—as in Washington—"[t]here is no duty to defend where there is no potential

8    coverage under the policy." *Modern Dev. Co. v. Navigators Ins. Co.*, 4 Cal. Rptr. 3d 528, 535

9    (Cal. Ct. App. 2003); *see Horsemen's Benevolent & Protective Ass'n, Inc. v. Ins. Co. of N. Am.*,

10    271 Cal. Rptr. 838, 841 (Cal. Ct. App. 1990) (same). The Court declines to address this grossly

11    under-briefed issue of whether there is a conflict between California and Washington law as to

12    coverage by estoppel or the binding of an insurer to an underlying covenant judgment. Even if

13    there is such a conflict, Washington law applies, for the reasons set forth below.

14        In the presence of a conflict of tort law, Washington courts follow section 145 of the

15    Restatement (Second) of Conflict of Laws to determine which state's law governs. *Rice v. Dow*

16    *Chem. Co.*, 875 P.2d 1213, 1217 (Wash. 1994). Section 145(1) directs the court to determine the

17    state with the most significant relationship to the occurrence and the parties under the general

18    principles stated in Restatement section 6. The most important section 6 factors for torts claims

19    are "the needs of the interstate and international systems, the relevant policies of the forum, the

20    relevant policies of other interested states and particularly of the state with the dominant interest

21    in the determination of the particular issue, and ease in the determination and application of the

22    law to be applied." Restatement § 145 cmt. b. In making the most-significant-relationship

23    determination, the court takes into account the following four contacts: (a) the place where the

24    injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicil,

25    residence, nationality, place of incorporation, and place of business of the parties; and (d) the

26    place where the relationship, if any, between the parties is centered. *Id.* § 145(2). "These contacts

1 are to be evaluated according to their relative importance with respect to the particular issue." *Id.*

2       Steadfast argues that California law applies because "Evans are California companies,"

3 "[t]he policies were issued to Evans at California addresses and were negotiated between Evans'

4 California broker and Steadfast's California underwriter," "[t]he claim was tendered by Evans in

5 California," and "all claims activities took place in California by a Steadfast claims handler

6 based in California." (Dkt. No. 99 at 17 (footnotes omitted).) These items go primarily to the

7 relatively minor fact that AFECO and AFED are incorporated in California. *See Rice*, 875 P.2d

8 at 1219 ("The fact that one of the parties is domiciled in a given state will usually carry little

9 weight of itself.") (quoting Restatement § 145 cmt. e) (quotation marks and indications of

10 alteration omitted). Meanwhile, consideration of the other section 145(2) contacts militates in

11 favor of applying Washington law. First, the injury suffered by AFECO and AFED as a result of

12 Steadfast's bad-faith failure to defend occurred in Washington, where they incurred the costs of

13 defending themselves against the Association's claims, and where the Washington Superior

14 Court entered a stipulated judgment against them. And, of course, the Association's complaint

15 asserted declarant liability under Washington's Condominium Act, for property damage that

16 occurred in Washington. As for the second section 145(2) contact, the "conduct causing the

17 injury" was Steadfast's refusal to defend. If that "conduct" can be said to have "occurred"

18 anywhere, it is in Washington, the state in whose court Steadfast failed to defend AFECO and

19 AFED. As to the third section 145(2) contact—domicil, residence, nationality, place of

20 incorporation, and place of business of the parties—while AFECO and AFED are incorporated in

21 California, Steadfast is incorporated in Delaware (not California), and in its letter to AFECO

22 denying coverage, Steadfast listed Illinois (not California) as the address of its "Claims"

23 business. (Dkt. No. 62 Ex. 3 at 10.) The only connection to California Steadfast has shown is that

24 the claims adjustor who handled AFECO's claim was based in California. (*Id.* Ex. 3 at 20.) The

25 final contact is "the place where the relationship, if any, between the parties is centered."

26 Restatement § 145(2)(d). Steadfast believes that the parties' insurance relationship is centered in

California because "[t]he policies were issued to Evans at California addresses and were

negotiated between Evans' California broker and Steadfast's California underwriter," "[t]he

claim was tendered by Evans in California," and "all claims activities took place in California by

a Steadfast claims handler based in California." (Dkt. No. 99 at 17.) But those events occurred in

California because AFECO is incorporated there and Steadfast's claims adjustor was based there.

In other words, the occurrence of those events in California has no significance apart from its

bearing on the third section 145(2) contact, already discussed. For the fourth section 145(2)

contact to have any independent significance, it must turn on something different from the third.

The Court will not double-count the fact of AFECO's incorporation in California and the

presence there of Steadfast's claims adjustor.

In addition, one section 6 factor in particular—the "relevant policies of the forum,"

Restatement § 145 cmt. b—weighs strongly in favor of the application of Washington law: "The

state of Washington has a strong interest in protecting insureds who must resort to litigation to

establish coverage." *Tilden-Coil Constructors, Inc. v. Landmark Am. Ins. Co.*, 721 F. Supp. 2d

1007, 1015 (W.D. Wash. 2010) (quoting *Axess Int'l Ltd. v. Intercargo Ins. Co.*, 30 P.3d 1, 8

(Wash. Ct. App. 2001)). Washington's law of coverage by estoppel serves precisely this interest.

In Washington, "where an insurer acts in bad faith . . . , the insurer is estopped from denying

coverage . . . even where an otherwise good policy defense exists." *Safeco Ins. Co. of Am. v.

Butler*, 823 P.2d 499, 505 (Wash. 1992); *see, e.g.*, *Mut. of Enumclaw Ins. Co. v. Dan Paulson

Const., Inc.*, 169 P.3d 1, 13 (Wash. 2007) ("[I]n this third-party reservation of rights situation in

which [the insurer's] bad faith interfered in its defense of [the insureds], [the insurer] did not

rebut the presumption of harm [from its bad faith]. As a result, . . . [the insurer] is estopped from

denying coverage."); *Kirk v. Mt. Airy Ins. Co.*, 951 P.2d 1124, 1128 (Wash. 1998) ("When the

insurer breaches the duty to defend in bad faith, the insurer should be held liable not only in

contract for the cost of the defense, but also should be estopped from asserting the claim is

outside the scope of the contract and, accordingly, that there is no coverage."). The Washington

Supreme Court has consistently emphasized the policy reasons behind this rule: "An estoppel remedy . . . gives the insurer a strong disincentive to act in bad faith [and] . . . better protects the insured against the insurer's bad faith conduct"; "[i]f the only remedy [for bad faith] available were the limits of the contract, then there would be no distinction between an action for an insurer's wrongful but good faith conduct, and an action for its bad faith conduct. An insurer could act in bad faith without risking any additional loss." *Butler*, 823 P.2d at 505–06; *see Kirk*, 951 P.2d at 1128 ("Without coverage by estoppel and the corresponding potential liability, an insurer would never choose to defend with a reservation of rights when a complete failure to defend, even in bad faith, has no greater economic consequence than if such refusal were in good faith. The requirement of acting in good faith cannot be rendered meaningless.").

Washington also has a strong policy interest in using "the amount of a covenant judgment [a]s the presumptive measure of an insured's harm caused by an insurer's tortious bad faith if the covenant judgment is reasonable under the *Chaussee* criteria":

> This approach promotes reasonable settlements and discourages fraud and collusion. Furthermore, using the amount of a covenant judgment to measure tort damages in this context makes sense in light of our long standing requirement that such settlements be reasonable. If a reasonable and good faith settlement amount of a covenant judgment does not measure an insured's harm, our requirement that such settlements be reasonable is meaningless. Finally, the *Chaussee* criteria protect insurers from excessive judgments especially where, as here, the insurer has notice of the reasonableness hearing and has an opportunity to argue against the settlement's reasonableness.

*Besel v. Viking Ins. Co.*, 49 P.3d 887, 891–92 (Wash. 2002).

Washington, not California, is the state with the most significant relationship to the parties and the occurrence—Steadfast's commission of the tort of bad faith. It was in a court in Washington—a state with a strong policy of protecting insureds—that Steadfast (a Delaware, not California, corporation) refused to defend AFECO, against a suit alleging declarant liability for damages under the Washington Condominium Act, for property damage that occurred in Washington. AFECO's and AFED's incorporation in California, the fact that Steadfast's claims

1   adjustor was based there, and AFECO's using a California broker as a middleman between them

2   do not outweigh these considerations. Washington law applies.

3                **2.   Coverage by Estoppel and Measure of Harm**

4        "[A]n insurer that refuses or fails to defend in bad faith is estopped from denying

5   coverage." *Truck Ins. Exch.*, 58 P.3d at 281. "[T]he amount of a covenant judgment is the

6   presumptive measure of an insured's harm caused by an insurer's tortious bad faith if the

7   covenant judgment is reasonable under the *Chaussee* criteria." *Besel*, 49 P.3d at 891. "Once [it

8   is] determined [that] the covenant judgment was reasonable, the burden shift[s] to [the insurer] to

9   show the settlement was the product of fraud or collusion." *Id.* at 892. "Absent such a showing,

10  the insurer is liable even beyond the limits of the insurance policy because through its bad faith,

11  the insurer has voluntarily forfeited its ability to protect itself against an unfavorable settlement."

12  *Mut. of Enumclaw*, 169 P.3d at 13 (quotation marks omitted); *see Kirk*, 951 P.2d at 1128 ("harm

13  is assumed, the insurer is estopped from denying coverage, and the insurer is liable for the

14  judgment").

15       Steadfast does not dispute that "Washington imposes coverage by estoppel" or that "in

16  Washington . . . a reasonable covenant judgment is the presumptive measure of damages." (Dkt.

17  No. 99 at 16–17 & n.70 (quotation marks omitted).) Its only argument that coverage by estoppel

18  does not apply here is that "Evans' own lack of good faith precludes any estoppel remedy. . . . If

19  Evans wanted Steadfast to underwrite its condominium and conversion risks, it should not have

20  consistently represented the opposite through its brokers and should have paid a premium for

21  such coverage." (*Id.* at 23–24.) But the Association (standing in AFECO's and AFED's shoes) is

22  not claiming that the policy covers *all* condo project risks. To the contrary, it acknowledges that

23  the policy does not cover damage connected to AFECO's and AFED's *work* performed in

24  connection with the construction, reconstruction, or remodeling of condo projects. It is precisely

25  that lack of coverage under the policy that justified calculation of the premium without reference

26  to AFECO's and AFED's projected condo construction costs. That Steadfast failed to appreciate

1   that the policy, by its plain terms, could cover declarant liability under the WCA does not show

2   unclean hands on the part of AFECO or AFED.

3       Steadfast is estopped from asserting coverage defenses because it refused to defend

4   AFECO and AFED in bad faith. The Washington Superior Court determined that $5,121,009 in

5   damages was a reasonable settlement of the Association's claims against AFECO, AFED, and

6   Spinnaker under the *Chaussee* criteria. Steadfast has produced no evidence or argument that

7   $5,121,009 is not the presumptive measure of damages caused by its bad-faith failure to defend,

8   or that the settlement is the product of fraud or collusion. Steadfast is thus liable to the

9   Association for $5,121,009.

10      **C.    Motions to Strike**

11      Steadfast has moved to strike the expert report of J. Kay Thorne (Dkt. No. 72 Ex. CC at

12  30–49.) The Court did not consider this report in ruling on the Association's motion. Steadfast's

13  motion to strike is therefore moot.

14      The Association moves to strike paragraphs x and xi from the declaration of Steadfast's

15  expert, Jack Farrell (Dkt. No. 102 at 5–6 ¶¶ x & xi) and the declaration of Steadfast underwriter

16  Carolina Calvo-Betdashtoo and the exhibits thereto (Dkt. No. 103). The Court reviewed this

17  evidence and nevertheless granted the Association's motion for partial summary judgment. The

18  Association's motions to strike are therefore moot.

19  **III.   STEADFAST'S MOTION FOR LEAVE TO FILE UNDER SEAL**

20      Steadfast moves for leave to file under seal three pages of documents that were

21  subpoenaed from AmWINS Insurance Brokerage of California and that the parties agreed to

22  keep confidential. (Dkt. No. 92.) "There is a strong presumption of public access to the court's

23  files. With regard to dispositive motions, this presumption may be overcome only on a

24  compelling showing that the public's right of access is outweighed by the interests of the public

25  and the parties in protecting the court's files from public review." Local Rules W.D. Wash. CR

26  5(g)(2). A motion to seal must provide "a clear statement of the facts justifying sealing and

1    overcoming the strong presumption in favor of public access." *Id.* CR 5(g)(4).

2       Steadfast argues that granting its motion is necessary to "honor[] the intent of the

3    confidentiality agreement." (Dkt. No. 92 at 3.) However, the confidentiality agreement provides

4    that "[a]ny party to this suit may request, and AmWINS may agree, that the provisions of this

5    Agreement be waived as to one or more of the AmWINS Confidential Documents." (Dkt. No. 93

6    Ex. 4 at 38 ¶ 11.) Steadfast has made no showing that it attempted to obtain AmWINS' waiver of

7    the provisions of the agreement for the three pages it wishes to file under seal. Moreover,

8    Steadfast filed—in a different exhibit to the same declaration, and not under seal—an exact

9    duplicate of one of the three purportedly "confidential" pages. (*Id.* Ex. 2 at 23.) This calls into

10   question Steadfast's assertion that the other two pages are truly confidential and in need of

11   protection from public view. Steadfast's motion for leave to file under seal is denied.

12   **IV.   STEADFAST'S MOTION FOR SUMMARY JUDGMENT**

13      Steadfast's motion for summary judgment (Dkt. No. 81) repeats the same arguments that

14   appear in its opposition to the Association's motion for partial summary judgment. For the

15   reasons outlined above, the motion is denied.

16   **V.   CONCLUSION**

17      The Association's motion for partial summary judgment (Dkt. No. 78) is GRANTED;

18   Steadfast's motion for leave to file documents under seal (Dkt. No. 92) is DENIED; and

19   Steadfast's motion for summary judgment (Dkt. No. 81) is DENIED.

20   //

21   //

22   //

23   //

24   //

25   //

26   //

1    DATED this 19th day of September 2012.

2

3

4

5

6

7

8                                    John C. Coughenour
                                     UNITED STATES DISTRICT JUDGE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26